336 So.2d 412 (1976)
Margaret Elizabeth Johnson STUBBS, As Executrix of the Will of Bella Hicks, Deceased, Appellant,
v.
J. Paul CUMMINGS and W.A. Struck, Appellees.
No. BB-188.
District Court of Appeal of Florida, First District.
August 19, 1976.
*413 C. Roger Vinson, of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellant.
Paul L. Cummings, Pensacola, for appellees.
WILLIS, BEN C., Associate Judge.
The appellant, plaintiff in the trial court, is the niece of Bella Hicks, deceased, and the executrix of her will. At the time of her death on May 9, 1972 Bella Hicks held title to a 4 2/3 acre parcel, identified as "Lot 4", which was one of eight lots laid out in a recorded plat, which were platted in 1936 as a means of partitioning a parcel of about thirty-eight acres which had been the property of the late Grandison Hicks, the father of Bella Hicks. In the partitioning, Lot 4 was acquired by Nellie B. Reeves, sister of Bella Hicks. Mrs. Reeves subsequently died and this property, by operation of law, passed to her husband and sole heir, Sampson M. Reeves. Mr. Reeves died in August 1958 and devised Lot 4 to his sister-in-law, Bella Hicks.
At the time of the partitioning in 1936 Bella Hicks received "Lot 6" which lies adjacent to "Lot 4". However, "Lot 6" is not involved in this case.
It appears that, notwithstanding the transfer of title from Nellie B. Reeves to her husband and thence to Bella Hicks, "Lot 4" was carried on the county tax rolls in the name of Nellie B. Reeves, and the tax statements were sent each year at all times pertinent to this case to Nellie B. Reeves.
Apparently until 1968 the taxes on Lot 4 were paid but in that year they were unpaid and a tax sale certificate was issued which was purchased by Edsel or Virginia McNiel in February 1970. On September 4, 1972 a tax deed was issued to the defendants.
On September 3, 1968 Bella Hicks was declared to be legally incompetent, but no guardian of her person or property was ever appointed. She lived until May 9, 1972 and after her death the plaintiff was appointed executrix of her estate on December 29, 1972. It is significant that Bella Hicks was incompetent during the period when the taxes fell delinquent, and the tax deed issued after her death but before her executrix was appointed. All notices relating to the delinquent taxes and the issuance of the tax deed were sent by the county official involved to Nellie B. Reeves, who had been dead at least fourteen years.
It is not shown that the County Comptroller or any other officer or personnel having any responsibilities in the procedures leading to the issuance of the tax deed had any personal knowledge of the title being vested in Bella Hicks or that she had been adjudged an incompetent.
The proceedings under review were initiated in the trial court by a complaint by the plaintiff executrix against the defendant tax deed holders which sought, among other things, to set aside the tax deed on the ground that the legal owner of the property, Bella Hicks, had been judicially declared incompetent prior to the attachment of the lien for taxes and at all times thereafter until her death, and that the tax deed issued when she was deceased and her estate was without a personal representative. The defendants answered the complaint and the parties stipulated to the facts which were presented to the trial judge on the legal questions involved.
The trial court entered a final judgment dismissing the complaint with prejudice. It was there mentioned that notice of the application for tax deed was given to Nellie B. Reeves, who appeared upon the tax rolls as the owner of record and that this is as is "required by Section 197.505, Florida Statutes, 1971". It was further stated:
"... No question is raised that the statutes at the time of the issuance of the *414 deed or prior thereto were fully and completely followed by the Comptroller. In the absence of exceptions in the taxing statutes, the same rules which apply to other persons apply to incompetents and infants. Fleming v. Hillsborough County, Fla.App., 107 So.2d 162, 166."
The appellant contends that the procedures followed by which the issuance of the tax deed divested legal ownership of real property from an unprotected incompetent constitutes a taking without due process of law in violation of both federal and state constitutions.
The plaintiff does not contend that there has been any failure to follow the procedures prescribed by applicable statutes for the issuance of the tax deed. However, she does assert that there is an implied exemption to the finality of tax deeds by the language in Section 197.620, Florida Statutes, 1971. This section refers to the application of Section 197.610 and 197.615, each dealing with a 20 year statute of limitations in favor of a tax deed holder so as to bar actions by a former owner. Section 197.620 provides that the other two sections shall apply whether there has or has not been any actual possession of the tax deed premises by the tax deed grantee, his heirs, etc. Such sections are directed to be construed as "Prospective, retroactive, and cumulative of the rights and benefits of grantees under tax deed and those claiming under them; provided, said sections shall not apply to infants, persons non compos mentis, or under other disability to maintain suit until one year after removal of such disability".
This reference to persons under disability is in connection with the operation of the statute of limitation prescribed in Sections 197.610 and 197.615, and is not pertinent to the procedures for the issuance of tax deeds.
Therefore, the question involved is whether or not due process of law is afforded in the issuance of the tax deed in this case. It is contended that the United States Supreme Court case of Covey v. Town of Somers, 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956) is controlling and compulsive of a reversal here.
The Covey case involved a foreclosure and sale of real property for nonpayment of taxes. The owner was mentally incompetent and notice of the foreclosure was given to her when she was without the protection of a guardian. Subsequently, a committee was appointed for the incompetent, but the state courts denied the committee's motion to open the default in the foreclosure proceedings. The incompetency of the property owner was actually known to the town officials. The notice of foreclosure was given pursuant to statutes by publication, by posting and by mailing. Such notice is to the effect that, unless the amount of unpaid tax liens together with interest and penalties are paid within 7 weeks, or an answer filed in 20 days, the right of redemption from foreclosure shall be cut off. These provisions purport to be applicable to and valid and effective with regard to all defendants, even though one or more of them be infants, incompetents, absentees, or nonresidents of the state.
The Court observed the established principle that:
"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pending of the action and afford them an opportunity to present their objections ... (W)hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."
It was further held:
"Notice to a person known to be an incompetent who is without the protection of a guardian does not measure up to this requirement. Assuming the truth of the uncontradicted assertions, that the taxpayer ... was wholly unable to *415 understand the nature of the proceedings against her property (from which it must be inferred that she was unable to avail herself of the statutory procedure for redemption or answer) and that the town authorities knew her to be an unprotected incompetent, we must hold that compliance with the statute would not afford notice to the incompetent and that a taking under such circumstances would be without due process of law."
The Covey case clearly holds that if the public officials charged with following the procedures leading to loss of land for nonpayment of taxes actually know of the owner's incompetency and of the absence of guardianship or other responsible protection, then the gesture of issuing the statutory notices would not meet the requirement of due process that notices given shall be reasonably calculated, under all the circumstances, to apprise the interested party of what is pending and what needs to be done. In the case under review there was no actual knowledge by the officials of the incompetency of Bella Hicks or even of her ownership of the property. However, the appellant contends that there was constructive notice because it was a matter of record that Bella Hicks was incompetent as she had been declared so by a proper judicial officer in Escambia County where the property is located, and that the probate records would have revealed the transfer of title from Nellie Reeves to Sampson Reeves and thence to Bella Hicks. The question thus presented is whether or not the revelation of factual circumstances in public records is to be equated with actual knowledge of public officials so as to come within the rule of the Covey case. Stated in another way, the question would be whether or not the county Comptroller or any other official charged with giving notice to owners or other interested parties of procedures which lead to loss of land for nonpayment of taxes has the duty to search all public records available to him to ascertain the actual status of ownership of the property and the incompetency of an interested party, or any other incapacity of such party to comprehend the notices given.
The statute pertaining to notice imposes no such requirement. Section 197.505, Florida Statutes, 1971, requires mailing of notice to owners when an application has been made for a tax deed by a holder other than the county. The copy of the notice is directed to be mailed to the "owner of the property ... if the name and address of such ... [person] ... appear on the tax roll for the year in which taxes were last extended on such property or if the name and address of such persons do not appear thereon then the notice shall be mailed to the person last paying taxes upon such lands as shown by the tax collector's receipt book and in the event no address be shown thereon no notice shall be required... . The failure of the owner ... to receive such notice shall not affect the validity of the tax deed issued pursuant to such notice".
We recognize that a significant hardship arises in the loss of the property here by the issuance of the tax deed and that Bella Hicks was at an extreme handicap to protect her lot from loss through nonpayment of taxes. It is a hardship on any owner to suffer such a loss whether such occurs from financial inability to pay the taxes, from illiteracy and inability to read or understand the prescribed notices, infancy, mental incompetence, or physical incapacity. It is the function of the legislature to prescribe the system of imposing and collecting taxes and in the case of ad valorem real estate taxes the ultimate resort to collecting the taxes is to the land itself regardless of what legal or equitable interests in the land are outstanding. The legislature has not seen fit to impose upon the county officials involved in tax deed procedures a duty to ascertain the status of owners of property by a search of all public records which might reveal same, but rather rely upon the tax rolls or tax collector receipt books or other information that is directly furnished them by interested parties.
*416 In Fleming v. Hillsborough County, Fla., DCA 2nd  1958, 107 So.2d 162, it was observed:
"No provision was made in the tax statutes favorable to infants or incompetents. The same rules which apply to everyone else apply to parties under disability unless the taxing acts themselves make such exceptions."
It was further stated in Fleming:
"Plaintiff had the right, within the statutory period, to redeem these properties, but he failed to do so, probably for reasons beyond his control. He has, without doubt, suffered great hardship, but the circuit courts have no authority to alleviate harshness of taxing acts where such relief is not provided for in the statutes of the State."
We are cited the Opinion of the Attorney General, No. 057-119, dated May 8, 1957 in which it was stated to the State Comptroller that where the owner of property encumbered by the tax lien and tax sale certificate is insane "we doubt that notice to the said owner would be sufficient to authorize the holding of the tax deed sale and the issuance of a tax deed". Also stated is: "There would probably be a want of due process of law." This was in reply to the question: "Where an application is made for a tax deed sale, based upon a tax sale certificate and tax liens encumbering lands of an insane person, how should the clerk of the circuit court proceed?" In answer to the question of procedure, it was advised that notice be served on the insane person and guardian and if no guardian, one should be appointed and qualified.
The above opinion seems to have been given in the light of actual knowledge of the insanity of an owner. In that posture the opinion is fully in line with the Covey case, but is not necessarily pertinent to the case here.
We thus must conclude that there has been no failure of due process here. The statutes provide a method of giving notice by publication and by mailing. Actual receipt of notice is not required, but strict adherence to statutory requirements is essential. The notices required are those deemed by the legislature to be most apt to accomplish the purpose of actual service and meaningful apprisal of pending procedures. In this regard they are somewhat analogous to constructive notice by publication which a state may utilize in matters pertaining to real property. In State, ex rel. Trustees Realty Co. v. Atkinson, 97 Fla. 1032, p. 1045, 122 So. 794, p. 799 (1929) it was stated that where constructive service is authorized and resorted to: "In such case nothing more is required by the law of the land than that the substituted service shall be such as in the exercise of legislative discretion shall be found most apt to accomplish the purpose of actual service."
For the reasons stated we conclude that the judgment of the trial court be and the same is
Affirmed.
RAWLS, Acting C.J., and SMITH, J., concur.