391 So.2d 315 (1980)
Charles O. KOVALESKI, Appellant,
v.
TALLAHASSEE TITLE COMPANY and ST. Paul Fire and Marine Ins. Co., Appellees.
No. SS-239.
District Court of Appeal of Florida, First District.
December 11, 1980.
*316 Charles Friend, Tallahassee, for appellant.
Peter Guarisco, and Paul F. Hartsfield, Jr., of Watkins, Hill & Marts, Tallahassee, for appellees.
ROBERT P. SMITH, Jr., Judge.
Acquiring land through tax deeds is risky business, not for the faint-hearted. To protect landowners from the drastic consequences of being too long delinquent in paying their property taxes, the legislature has fashioned, and it tinkers with frequently enough to unnerve the experts, a complex and sometimes inscrutable statutory process which must be followed to the letter. Unless all the i's are dotted and all the t's are crossed, the tax deed which emerges from the process is no good. Never mind that the clerk mailed notice of the tax deed application to the landowner's address as currently and reliably stated on the tax rolls; the statute says the clerk should have mailed it to the owner's address as shown on his old deed, where he hasn't lived for years, so the tax deed recipe is ruined. Courts have said things like that for years, this court most recently in Weiss v. Prudential Enterprises, Inc., 387 So.2d 457 (Fla. 1st DCA 1980).[1]
The law's steady insistence on strict compliance with statutory requirements for tax deeds takes a different twist in this case. Appellant Kovaleski, fearful that the tax deed he bid and paid $950 for wasn't any good, and that both the land and his new improvements costing $5,800 would surely be lost to the former record titleholders who weren't notified of the tax sale, paid them another $6,000 to acquire their interest. Then he sued the appellee abstractor for negligently omitting those owners from the report of title search made for the tax collector. The circuit court said Kovaleski loses because the strict requirements for a tax deed were fully complied with, Kovaleski's tax deed was good, the former owners were shut out, Kovaleski's payment to them was voluntary and unnecessary, and the abstractor's negligence if any was not a legal cause of damage to Kovaleski. We agree.
On Kovaleski's prior appeal from an order dismissing with prejudice his third amended complaint, we held he had sufficiently stated a cause of action against Tallahassee Title for alleged negligence in omitting the beneficial interest of Shaw and Chestnut from a title abstract prepared for the tax collector's use in certifying to the circuit court clerk the names of titleholders and lienholders to be notified of the tax deed application. Kovaleski v. Tallahassee Title Co., 363 So.2d 1156 (Fla. 1st DCA 1978). The issue on that appeal was whether Kovaleski, who was not privy to the tax collector's transaction with Tallahassee Title, adequately pleaded that he *317 justifiably relied on the negligently-prepared abstract in buying the tax deed and improving the property, only then to discover the interest of Shaw and Chestnut, to whom Kovaleski paid a substantial sum to clear his title. The court held, 363 So.2d at 1161:
The abstracter certainly knew that its preparation of the title search was not for the benefit only of the tax collector with whom it contracted or of any tax certificate holders, but either knew or should have known that the law permitted the property upon which the title search was prepared to be sold for cash to the highest bidder at public auction. Section 197.266. It was therefore foreseeable that the person who successfully bid the property would rely upon the abstract in making his bid, and that any negligent omission of a preexisting interest from the abstract could cause injury to such person. We consider plaintiff's complaint, as finally amended, stated a cause of action.
On remand the circuit court held by summary judgment that Tallahassee Title's omission of the Shaw and Chestnut interest from the report of title search (which was revealed by the proofs not to be, strictly speaking, an "abstract" of title) was not a legal cause of Kovaleski's loss to Shaw and Chestnut. We agree with the circuit court that Kovaleski's title by tax deed was sound against any adverse claim by Shaw and Chestnut arising from the omission of their names, address, and legal interest from the search report and the tax collector's certification, and their consequent omission from the clerk's notice of sale. It follows that Kovaleski's alleged loss, consisting of his payment to Shaw and Chestnut for the release of their claimed interest, was damage self-inflicted without legal injury proximately caused by Tallahassee Title's asserted negligence.
The Leon County tax rolls for 1975 and at least two earlier years assessed the subject land to E.L. and J.S. Simpson, who did not pay the taxes for 1973, 1974, and 1975. In May 1974 a Dr. Hunt purchased a tax certificate issued for nonpayment of the 1973 and 1974 taxes, and in the Spring of 1976 Hunt paid the delinquent 1975 taxes and applied for a tax deed. Then, in order to certify to the circuit court clerk the names and addresses of the persons whom the clerk was required to notify of the tax deed application, Sections 197.241(2), 197.256(1), Florida Statutes (1977), the tax collector engaged Tallahassee Title, for $25, to provide a title search and report.
In conducting its search for information required by the tax collector, Tallahassee Title undertook what its manager termed a "title search," which for present purposes may be described as a search of the recent Official Records and other selected public records for the recent history and present status of the record title. [We need not linger over Tallahassee Title's differentiation of its "title search" from its more thorough and fully documented "abstract" search, nor need we distinguish Tallahassee Title's report of title search from its more formal certificate of title insurance, or from a lawyer's opinion of title. Whatever else Tallahassee Title was requested to or intended to discover and report, Tallahassee Title's manager conceded that the Shaw and Chestnut record title, described below, should have been discovered and reported.] After completing its search, Tallahassee Title reported in a letter to the tax collector that the last significant instrument of record affecting the property was an "escrow agreement" between E.L. and J.S. Simpson and the former titleholder, Rowan, who was reported deceased although-and this statement is inaccurate-"no probate [is] recorded in Leon County." In the report's conclusion only the Simpsons, of "Williams Landing Road, Tallahassee," and tax certificate holder Hunt were listed as "appear[ing] to have an interest in the captioned property."
The tax collector engaged Tallahassee Title to conduct a title search because the collector's duties were as specified in Section 197.241(2), Florida Statutes (1977):
Any certificate holder ... making application for a tax deed shall pay the collector *318 all amounts required for redemption or purchase of all other outstanding tax certificates, plus interest, any omitted taxes, plus interest, and delinquent taxes, plus interest, covering the land. .. . The tax collector shall then deliver to the clerk of the circuit court a statement certifying the names and addresses of all persons the clerk is required by law to notify prior to the sale of the property....
The "persons the clerk is required by law to notify" are as described in Section 197.256(1), Florida Statutes (1977) [bracketed numbers are added here to differentiate more clearly the specified classes of persons]:
In addition to the publication of the notice provided for by s. 197.246, the clerk of the circuit court shall notify, by certified mail with return receipt requested, [1] the legal titleholder and lienholders of record of the property and each lienholder as listed in the collector's certification who claims a lien thereon at the date of the filing of the application for obtaining tax deed, if the address of the owner appears on the record of the conveyance of the lands to the owner, [2] or, if the address of the owner does not appear thereon, then the notice shall be mailed, by certified mail with return receipt requested, to the owner to whom the property was assessed on the tax roll for the year in which the property was last assessed, [3] or, if the name and address of such person does not appear thereon, then the notice shall be mailed, by certified mail with return receipt requested, to the person last paying taxes upon the lands. If, upon a diligent search, no address can be found, then no notice shall be required... .
Thus Section 197.256(1) requires that notice of a tax deed application be mailed by the clerk to one or another class of persons, arranged in a descending order of preference. The first preferred class consists of "the legal titleholder and lienholders of record of the property and each lienholder as listed in the collector's certification who claims a lien thereon at the date of the filing of the application... ." But by its explicit terms the statute extends personal notice to that class only "if the address of the owner appears on the record of the conveyance of the lands to the owner"; and the statute dictates that notice be given instead to the second-level class "if the address of the owner does not appear thereon... ."[2] Thus whether Shaw and Chestnut were entitled as "the legal titleholder[s] ... of record" to certified mail notice from the clerk, Section 197.256(1), and hence were persons whose "names and addresses" *319 were required to be included in the tax collector's certification to the clerk, Section 197.241(2), depends on whether "the address of the owner[s] [Shaw and Chestnut] appears on the record of the conveyance of the lands to the owner." Section 197.256(1).
Shaw and Chestnut were in fact the legal titleholders of record at all pertinent times: when Hunt applied for a tax deed in the Spring of 1976, when Tallahassee Title conducted its title search, when the tax collector certified names and addresses of interested persons to the clerk, and when the clerk gave the statutory notice by certified mail. Shaw and Chestnut were the legal titleholders of record at least from January 16, 1976, forward, by virtue of a certificate of title then issued to them, and promptly recorded in the Official Records of the county, after they successfully bid for the property at the clerk's foreclosure sale on a circuit court judgment establishing as a lien their "escrow agreement and contract for deed" which was assigned to them (apparently by the Simpsons) in December 1973.
It being settled, then, that Shaw and Chestnut were "the legal titleholder[s] ... of record" at all pertinent times, were they persons to whom the clerk was obliged to give notice by certified mail before conducting a sale and issuing a tax deed? They were not. Neither their certificate of title issued January 16, 1976 nor their antecedent certificate of sale bore the address of Shaw and Chestnut. Because "the address of the owner does not appear" on "the record of the conveyance of the lands to the owner," the clerk was not directed by Section 197.256(1) to mail Shaw and Chestnut, as legal titleholders, notice of the tax deed application. For the same reason the tax collector was not directed by Section 197.241(2) to include Shaw and Chestnut, as legal titleholders, in certifying to the clerk "the names and addresses of all persons the clerk is required by law to notify... ." Section 197.241(2).
Nor were Shaw and Chestnut second-level persons entitled to notice as "the owner[s] to whom the property was assessed on the tax roll for the year in which the property was last assessed"; for again "the name and address of such person[s] [do] not appear thereon," i.e., on the "tax roll for the year in which the property was last assessed." Section 197.256(1). Neither the names nor address of Shaw and Chestnut were shown on the 1975 tax roll; and though "Shaw, Ruth J Etal" was shown as "Owner" on the 1976 tax roll computer printout which was available when the tax collector prepared his Section 197.241(2) certification on May 7, 1976, and Shaw's name was shown in that fashion in the collector's certification,[3] Shaw's address was not shown by the 1976 printout, and it therefore was not shown by the collector's certification.
Finally, Shaw and Chestnut were not "the person[s] last paying taxes upon the lands," so they did not qualify for certified mail notice in accordance with the statute's third-level preference.
The persons entitled to certified mail notice in accordance with Section 197.256(1) were E.L. and J.S. Simpson, the second-level persons who were "the owner[s] to whom the property was assessed on the tax roll for the year [1975] in which the property was last assessed," and whose Tallahassee mailing address was also shown. Thus, by including the names and address of the Simpsons in his certification, the tax collector properly informed the clerk of the names and addresses of the persons who were entitled to receive certified mail notice of the tax deed application. By mailing *320 that notice to the Simpsons, the clerk, too, fulfilled his statutory duties.
Thus it appears that Kovaleski's title acquired by tax deed is not vulnerable to attack by record titleholders Shaw and Chestnut for any inaccuracy or inadequacy in the clerk's notice mailed to interested persons, or in the collector's certification of the names and addresses of those persons, or in Tallahassee Title's title search report concerning those persons and their interests. Strict compliance with the applicable statutes is what is necessary to make a good title by tax deed, Jernigan v. Harrison, 136 Fla. 320, 186 So. 511 (1939), Edgewood Boys' Ranch v. Ernst, 376 So.2d 30 (Fla. 3d DCA 1979), and strict compliance is what was afforded here. On this summary judgment record there is no genuine issue as to any material fact, and on the undisputed facts Kovaleski's title was good against the world, including Shaw and Chestnut. Neither the tax collector nor the clerk was obliged to search for Shaw and Chestnut's address in the court file pertaining to their foreclosure proceedings, or in the record of Rowan's probate proceedings, or elsewhere. And had the collector or clerk found their address anywhere but on the record of their conveyance, finding it would not have authorized the clerk to omit notice to the Simpsons, the second-level persons entitled to notice; and giving additional notice to Shaw and Chestnut would have been a thoughtful gesture, but of no significance under Section 197.256(1). Mid-State Homes, Inc. v. Reed, supra n. 2; Stubbs v. Cummings, 336 So.2d 412 (Fla. 1st DCA 1976); Weiss v. Prudential Enterprises, Inc., supra n. 1.
Since Kovaleski's tax deed was good as against Shaw and Chestnut, and it would not have been rendered stronger had personal notice been given to them, it is apparent that Kovaleski's complaint against Tallahassee Title is not based on any deficiency in the title search which was significant to the statutory purpose of the search, but is based instead on a deficiency-Tallahassee Title's failure to note and report Shaw and Chestnut's record title-which Kovaleski erroneously assumed invalidated his deed. The flaw in Kovaleski's claim is that his own erroneous assumptions about the efficacy of his tax deed, and his resulting payment for the release of interests already superseded, were not in legal terms a proximate result of the negligence complained of.
In sustaining the circuit court's summary judgment we reaffirm this court's prior Kovaleski decision that privity of contract between the tax deed purchaser and the abstractor is unnecessary to liability in a case such as this, because persons bidding for a tax deed may be held by a jury to have reasonably and foreseeably relied on the accuracy of the abstract or title search report prepared for the tax collector. We do not derogate that decision in the slightest. We simply hold that the record evidence disproves Kovaleski's allegation, sustained as sufficient in law but not as a matter of fact on the prior appearance here of this case, that Kovaleski
... was damaged by the failure of the defendant abstractor to set forth in the abstract the fact of record of a preexisting interest in the same property in favor of Ruth Jeanette Shaw and Mary Louise Chestnut, which was of record in the Public Records of Leon County.
We recognize, of course, that the omission of the Shaw and Chestnut interests from the title search report was in a sense the cause of Kovaleski's eventual payment to them for a quiet title. But no tax deed recipient is guaranteed a quiet title by virtue of his deed, and those like Kovaleski who deal in tax deeds know that contest and litigation are occupational hazards. Therefore, while we continue to recognize that an abstractor may be liable without privity to the tax deed purchaser who justifiably relies on a negligently-prepared abstract, when the tax deed is for that reason faulty and the purchaser has sustained expenses which are not refundable under Section 197.166, we decline to extend our prior Kovaleski decision to the point of holding that the purchaser of a valid tax deed may recover from the negligent abstractor payments *321 he voluntarily made to a foreclosed owner on the erroneous assumption that the omission of that owner's name and address from the tax search report vitiated the tax deed.
AFFIRMED.
BOOTH, J., and WOODIE A. LILES, (Retired), Associate Judge, concur.
NOTES
[1] In Weiss this court said exactly that, 387 So.2d at 458-59:

The statute makes no provision for the clerk to depart from its instructions even when to do so would result in sending the notice to a correct address rather than an obsolete one.
The Supreme Court and the various district courts of appeal have repeatedly held that strict adherence to the statutory notice requirements in relation to issuance of a tax deed is essential to the validity of the deed. (Numerous citations omitted.)
[2] Because at all times pertinent here Shaw and Chestnut had already received and recorded a certificate of title, we reject Kovaleski's characterization of them as foreclosure judgment lienholders, which is Kovaleski's predicate for urging that Shaw and Chestnut, as lienholders of record, were entitled to certified mail notice whether or not the owner's address appeared on his recorded conveyance. Neither do we agree that lienholders are entitled to notice even if the owner is not because his address does not appear in his conveyance. We note, however, the seeming perversity of sending notice to none in the first-level class "if the address of the owner does not appear thereon," i.e., "on the record of the conveyance of the lands to the owner." We do not know why the statute omits notice to lienholders of record simply because the legal titleholder's address does not appear on his deed. No other interpretation seems possible, however, for if we were to read the "if the address of the owner" phrase as modifying only the last antecedent phrase, "and each lienholder as listed ...," we should render the modifier even more pointless than it is, by detaching it from the "legal titleholder" phrase to which it clearly belongs. Besides not improving the statute, that interpretation would conflict with Mid-State Homes, Inc. v. Reed, 332 So.2d 43 (Fla. 1st DCA 1976). This statutory puzzle did not result from fragmented amendments over the years, as is so often true of convoluted statutes; the 1972 session law originating this particular tax deed scheme similarly provided that the clerk

... shall mail a copy of the notice to the legal titleholder of record of the property and to each lienholder of record, if any, who claims a lien thereon at the date of the filing of the application for obtaining tax deed, if the address of the owner appears on the record of the conveyance of the lands to the owner, or if the address of the owner does not appear thereon, then... .
Ch. 72-268, Sec. 1; Section 197.256, Florida Statutes (1972 Supp.)
[3] We do not intimate that the 1976 computer printout bearing the name of "Shaw, Ruth J Etal" as "Owner" was the "tax roll" to which the collector and clerk were obliged to look to identify second-level notice recipients, Section 197.256(1). See section 193.114 concerning the preparation and approval of the "assessment roll." The appearance of Shaw's name as owner (her address did not appear) in the collector's certification, which was in the clerk's file examined by Kovaleski before the tax deed sale, no doubt should have alerted Kovaleski to outstanding interests other than that of the Simpsons; but on this summary judgment record we are not concerned with evidence of Kovaleski's contributory negligence.